J-A16032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF BURLA H. RICKERSON, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BERNARD J. HESSLEY, ESQ. | No. 1256 WDA 2015 |

Appeal from the Order Dated June 24, 2015,
in the Court of Common Pleas of Warren County, Orphans' Court,
at No(s): OC 35 of 2014

BEFORE:  SHOGAN, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 07, 2016**

Bernard J. Hessley, Esquire (Hessley) appeals from the order entered June 24, 2015, in the Court of Common Pleas of Warren County, which reduced Hessley's attorney fee for the administration of the Estate of Burla Rickerson (the Estate).  We affirm.[1]

---

* Retired Senior Judge assigned to the Superior Court.

[1] Also before us is a Motion to Quash filed by Donna L. Rickerson (Rickerson), as Appellee and lifetime beneficiary of the trust established by the Estate.  Rickerson avers that the June 24, 2015 order was a partial accounting and therefore not appealable.  Additionally, Rickerson asserts the issues presented were not properly preserved because no exceptions were filed.  Lastly, Rickerson contends Hessley's attempt to argue against the reduction in the executor's fee was (1) improper, because Hessley did not represent the executor, and (2) moot, because the Executor had already reimbursed the Estate.

On November 25, 2015, this Court granted Rickerson's motion in part, quashing the appeal as to the reduction of the executor's fee.  This Court denied the motion without prejudice in all other respects, and permitted Rickerson to raise the issue before this panel.  Rickerson has not renewed her objection; regardless, the order is appealable and Hessley's failure to file exceptions was not fatal to this appeal.  **See** Pa.R.A.P. 342, *Notes* ("Subdivision (a)(1) provides that the adjudication of any account, even an

Burla Rickerson (Decedent) died on June 26, 2009. Her will, dated November 24, 1977, was admitted to probate and John Hennessy (the Executor) was appointed executor of the Estate. Orphans' Court Memorandum Opinion and Order, 6/24/2015, at 1 (unnumbered). Hessley was retained to represent the Estate. *Id.* Hessley and the Executor worked together on matters involving the Estate, and in October 2010, the Estate paid fees to the Executor of $8,400 and to Hessley of $8,600. The Executor died on July 6, 2014. *Id.*

Subsequent to the Executor's death, "[on] November 25, 2014, [Hessley] filed what purported to be a 'First and Final Account of Joseph Hennessy, Administrator for the Estate of John Hennessy, deceased, Executor of the Estate of Burla H. Rickerson, deceased [(Account)].'" *Id.* at 2. Rickerson filed objections to the Account, which included, *inter alia*, an objection to the fees paid by the Estate to the Executor and Hessley. A hearing was held on June 22, 2015.

Following the hearing, the orphans' court disapproved the fees paid to the Executor and Hessley. Specifically, the court concluded that Hessley's fee in the amount of $8,600 was excessive because "no time records were introduced to indicate the time involved in representing the [E]state;

_____

interim or partial account, is appealable. Previously, only the adjudication of the final account would have been appealable as a final order under Rule 341. The prior limitation has proven unworkable for estate administration taking years and trusts established for generations during which interim and partial accounts may be adjudicated and confirmed."). *See also,* Pa.R.O.C. 7.1 (providing that exceptions **may** be filed but are not required).

because certain actions taken by counsel were detrimental to the [E]state proceedings []; and because the fee was excessive [for] the assets included in the [E]state filings and the work completed." *Id.* The orphans' court approved an executor fee and estate attorney fee of $2,000 each, and ordered that the Estate be reimbursed within thirty days. *Id.*

On July 23, 2015, Hessley filed a motion for reconsideration.[2] This timely-filed appeal followed. Hessley raises three issues for this Court's consideration, all of which contest the orphans' court's reduction of Hessley's attorney fee. *See* Appellant's Brief at 14. We review these issues mindful of the following standard.

> Our scope of review of a decree or order entered by the [o]rphans' [c]ourt is extremely limited. We will modify a decree only if it is not supported by competent or adequate evidence, if an error of law has been committed, or if the [orphans' court] abused its discretion or capriciously disbelieved credible or competent evidence.

*In re Sweeney*, 695 A.2d 426, 428 (Pa. Super. 1997)(quoting *In re Estate of Maljovec*, 602 A.2d 1317, 1319 (Pa. Super. 1991)). "Fixing the amount of compensation is peculiarly within the discretion of the court below, which in most cases is better able to judge as to the reasonableness of such charges than the appellate court. Unless such discretion is clearly abused the judgment of the court below will not be disturbed." *In re Strickler's Estate*, 47 A.2d 134, 135 (Pa. 1946).

---

[2] The orphans' court did not address Hessley's motion before he filed his appeal.

The orphans' court offered the following reasoning for reducing Hessley's counsel fees. Notably, the orphans' court points out numerous errors that occurred throughout the administration of the Estate.

23. No notice of the Account's filing and no notice of the dates by which objections to such Account must be filed was ever served on the parties in interest as is required[.]

24. No petition for adjudication or statement of proposed distribution was served on the parties in interest.

25. The Account is improperly termed a "Final" Account. The state administration is not yet complete because there are still assets of the[E]state which the Executor failed to claim or marshal together with other [E]state assets for distribution pursuant to the will[.]

26. The Account is incomplete and fails to account for the Executor's administration of the Estate from the date of death, June 26, 2009, forward[.]

27. The Account fails to include a $67.09 Pennsylvania Inheritance tax refund of overpaid taxes which should have been received by the Estate on or about March 21, 2011.

28. The Account does not list in an itemized fashion all assets marshaled by or which came into the possession of the Executor. It is unclear from the Account the sources from which the assets came that make up the PNC Bank account balance as of November 12, 2010 of $34,399.95 and the "interest and other deposits" of $75,836.81 listed in the Account.

29. The Account fails to separately account for principal and income of the Estate.

30. The Account does not include any proof of advertisement of the Estate.

31. The Account fails to include or address the [h]ouse held and maintained by the Executor as a part of the [E]state or the improper distribution thereof from the Estate to [the Executor],

holding himself out as Trustee of the Trust without any court authority to do so.

32. The Account fails to state whether [the Executor] filed a Form 1041 Fiduciary Income Tax Return on behalf of the Estate or whether any federal income taxes due on such return were paid.

33. The Account fails to state whether [the Executor] filed final Forms 1040 and PA-40 Income Tax Returns on behalf of the Decedent or whether any federal or state income taxes due on such returns were paid.

34. The Account fails to state whether the [E]state was advertised.

Thus the [E]state consisted of residential real [E]state, which was to be conveyed to a trustee, and bank accounts. The gross [E]state was $154,856.86. The attempted conveyance of the real [E]state was a fiasco. [Hessley] prepared a deed from the [E]xecutor to the [E]xecutor as "trustee," when the [E]xecutor had not been named as trustee or alternate trustee, and at a time when the trustee named in the will had not renounced or been approved. [Hessley] did all of this without filing a petition asking the court's approval, thus creating a cloud on the real estate title. [Hessley] and [the E]xecutor failed to account for the liquid assets which came into their possession in such a manner that those interested in the [E]state could understand the assets. [Hessley] and [the E]xecutor failed to marshal all of the assets. [Hessley] and [the E]xecutor failed to keep the beneficiary of the [E]state informed as to the status of the same. In fact [Attorney Hessley] and [the E]xecutor failed to give the beneficiaries even the notice required by law. [Attorney Hessley] and [the E]xecutor failed to account for Pa. and federal income taxes of [D]ecedent and the [E]state. [Hessley] and [the E]xecutor filed the Pa. Inheritance Tax Return on October 29, 2010, which was late as the [D]ecedent died June 26, 2009, and incurred interest charges of $143.89. There would appear to be no excuse for this untimely filing as [Hessley] and [the E]xecutor had cashed the [D]ecedent's certificates of deposit (incurring taxable interest income) and were able to pay themselves, $8400 to the executor and $8600 to [Hessley] on October 21, 2010, prior to filing the inheritance tax return. [Hessley] prepared and the executor filed a Pa.O.C.

Rule 6.12 Final Status Report on October 29, 2010. This report falsely listed the [E]state as complete, and falsely represented to the court that an informal accounting had been made to the interested parties. Further, as a result of all of the improper actions committed by [Hessley] and the [E]xecutor, the [E]state and the beneficiaries have suffered considerable delays and additional expenses in an effort to correct the errors made.

The [orphans' court] did note that as a result of the unfortunate and untimely death of the [E]xecutor, matters pertaining to the administration of the [E]state were complicated. However, there were significant missteps taken regarding the handling of the [E]state by [Hessley] and the [E]xecutor, before his untimely death, which ultimately created the current predicament for the [E]state.

Supplemental Opinion, 10/14/2015, at 8-10 (unnumbered)

Under these circumstances, we discern no error in the orphans' court's reasoning and cannot find the court abused its discretion in reducing Hessley's attorney fee. In doing so we note that the determination as to what constitutes a reasonable fee is within the discretion of the orphans' court when considering

the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re LaRocca's Trust Estate*, 246 A.2d 337, 339 (Pa. 1968). Here, the record supports the orphans' court's finding that a reduction in Hessley's fee was appropriate due to the improper actions and "significant missteps" taken

by Hessley, which caused considerable delays and additional fees to be incurred by the Estate.[3]

Accordingly, because we conclude that the orphans' court did not abuse its discretion by reducing Hessley's fee, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

---

[3] Finally, Hessley argues this case involves a surcharge, and that, therefore, the orphans' court was obligated to find that Hessley acted negligently in his handling of the Estate. Appellant's Brief at 19. We note that "[a] surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care." **In re Estate of Westin**, 874 A.2d 139, 144 (Pa. Super 2005) (citations removed). A finding of negligence is necessary when imposing a surcharge. **Id.**

After a review of the record, we find no evidence to suggest that the orphans' court imposed a surcharge. To the contrary, the court ordered a reimbursement to the Estate, not as a penalty, but as a matter of necessity to effectuate the court's order. **See** Memorandum Opinion and Court Order, 6/24/2015. Upon determining that an attorney's fee of $2,000 was more appropriate than the amount paid to Hessley in October 2010, it logically followed that Hessley would be require to reimburse the Estate for the difference in the amount approved from the amount originally paid. Consequently, this argument holds no merit.